UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Transatlantica Commodities Pte Ltd., | § § § | |
| Plaintiff | § § | |
| v. | § § | Case No. 2:22-cv-02454-EEF-JVM |
| Hanwin Shipping Limited, | § § | IN ADMIRALTY |
| Defendant, *in personam* | § § | |
| and | § § | |
| Coastal Cargo Company, L.L.C., Blue Water Shipping Company, Argo Fine Imports, LLC | § § § § | |
| Garnishees. | § § | |

**MEMORANDUM IN SUPPORT OF**

**MOTION FOR EMERGENCY HEARING TO RELEASE OF WRITS OF MARITIME ATTACHMENT AND GARNISHMENT, OR IN THE ALTERNATIVE, SET SECURITY AND COUNTER-SECURITY**

Defendant Hanwin Shipping Limited ("Hanwin"), through its undersigned counsel, and subject to its restricted appearance according to Supplemental Admiralty Rule E(8), files this Motion for Emergency Hearing to Set Security and Counter-Security and for Release of Writs of Maritime Attachment and Garnishment.

Hanwin moves for an emergency hearing pursuant to Supplemental Admiralty Rule E(4)(f) requiring Transatlantica to show why the attachments should not be vacated or other relief granted consistent with these rules. In the alternative, Hanwin moves for the Court to set security pursuant to Rule E(5)(a) in order to avoid any disruption to the vessel now in the Eastern District of Louisiana which is seeking to berth and continue cargo operations by Monday August 8, 2022, and for the Court to set counter-security under Rule E(7)(a) in respect of Hanwin's

counterclaim against Transatlantica, arising from Transatlantica's breaches of the underlying *M/V Tac Imola* charterparty between the parties, a dispute that is currently proceeding in London arbitration. In support of its motion, Hanwin would respectfully show as follows:

## FACTS

*Hanwin Urgently Requests a Prompt Rule E Hearing to Release the Writs*
*of Attachment or, in the Alternative, to Set Security and Counter-Security*

A vessel called the *M/V Belknight*, chartered by Hanwin, has arrived in the Eastern District of Louisiana and is scheduled to berth in New Orleans by Monday August 8, 2022.

As such, Hanwin requests that the Court schedule a hearing at the earliest possible opportunity in order to permit the *M/V Belknight* to continue cargo discharge operations without interruption, arising from the threat that payments in respect of such discharge operations will be attached, and Hanwin requests that the Court lift or modify the writs of attachment in order not to prevent Hanwin's affiliated companies from continuing discharge operations with its counterparties. Due to Transatlantica's actions, the *M/V Belknight* is in danger of missing its berthing window – causing damages which will accrue for Transatlantica's account – if the attachment writs are not released or security is not otherwise resolved by that time.

As detailed below, Hanwin has already posted substantial security in respect of Transatlantica's underlying claims involving the *M/V TAC IMOLA*, but Transatlantica has refused to post counter-security in the same amount, thus inequitably placing the parties on unequal footing. Transatlantica has not sufficiently alleged that there is Hanwin property in the district by merely referring to third-party companies that "share the same owners" even though its claims are against Hanwin Shipping Limited, and not the charterer of the *M/V Belknight*, a separate company called City Expansion Limited.

*The Parties' Underlying Dispute Regarding the M/V TAC IMOLA*

The facts concerning the parties' underlying dispute may be taken from Hanwin's own verified complaint, filed against Transatlantica in the United States District Court for the District of Massachusetts on July 22, 2022. *See* Exhibit 1 (Massachusetts Verified Complaint).[1] Hanwin's own claim against Transatlantica arises from a cargo fire aboard the bulk carrier cargo ship *M/V Tac Imola*. Specifically, Hanwin and Transatlantica entered into a charter party, on or about November 3, 2021, for Hanwin to charter the *M/V Tac Imola* from Transatlantica, as disponent owners. On or about November 24-25, 2021, the Vessel took on a large load of plywood, along with other cargo, for carriage to Baltimore, Maryland. At some point during the voyage, the plywood cargo caught fire as a result of improper stowage, allowing the cargo to shift and build friction between itself, other cargo, and the Vessel itself. As a result of the fire, the now-damaged cargo required special handling to discharge from the Vessel, the Vessel had to make unscheduled port calls to discharge portions of the damaged cargo; and port terminals have charged significantly more for the special handling to offload the damaged cargo.

The cargo fire was caused by Transatlantica's lack of due diligence in loading, stowing, and securing the cargo, and Transatlantica's failure to properly load, stow, and secure the cargo constituted a breach of the charter party between Hanwin and Transatlantica.

The charter party provides for arbitration of disputes between the parties in London – a matter which Transatlantica does not dispute – and Hanwin is accordingly entitled to counter-security from Transatlantica in respect of its claims, in at least the amount of security posted by Hanwin in its prior litigation and disputes with Transatlantica, and this action should subsequently be stayed.

---

[1] References to exhibits are to the accompanying Declaration of Brian P. Maloney dated August 4, 2022, filed herewith.

At the time of this motion, Hanwin has suffered damages in the amount of approximately $3,632,331.02.[2] Accordingly, if the writs of attachment are not immediately released due to Transatlantica's serial abuse of Rule B process (as explained in more detail below) Hanwin respectfully requests that the Court set security and counter-security in this action in order to permit the *M/V Belknight* to berth on Monday August 8, 2022 and to continue discharge operations without further Transatlantica interference.

*Transatlantica's Serial Abuse of Rule B Process*

Transatlantica's position, as disponent owner under the charterparty for the *M/V Tac Imola*, is effectively that Hanwin should have paid charter hire during the period of the various diversions that vessel had to undertake to handle and offload the damaged cargo, or related payments to third parties, such as the terminal operator in Baltimore, together with interest and attorneys' fees. Hanwin's position is that those charges are for Transatlantica's account due to Transatlantica's lack of due diligence in loading, stowing, and securing the cargo from the very outset of that vessel's voyage.

But however that dispute plays out in London arbitration, the parties have not agreed regarding an appropriate security and counter-security package that would place the parties on equal footing. This has prompted Transatlantica to engage in serial Rule B attachments in the United States and in Panama against ships chartered not only by Hanwin, but by other companies – not alter egos – associated with Hanwin. Hanwin has already posted $995,857.22 to an escrow account maintained by Ince & Co. in respect of the London arbitration under escrow agreements

---

[2] In its Verified Complaint in Massachusetts, Hanwin estimated that the damages it "had suffered and will suffer" to be $4,020,898.44, based in part on good-faith estimates concerning anticipated port costs and other similar expenses that had not yet been incurred. Hanwin's current calculation of damages reflects updated numbers based on invoices generated for those aforementioned expenses, as well as attorneys' fees incurred in connection with this dispute, which Hanwin intends to seek in London arbitration. These damages figures remain subject to change.

made between the parties (*see* Ex. 2).  In Texas, though whether the funds attached are property of Hanwin is subject to dispute, Transatlantica's litigation has caused payments made to Hanwin's port agent that are committed to third parties to be attached in the amount of $979,893.63.  *See* Exhibit 3 at ¶ 6 ("ASCC holds $979,893.63 in funds paid to ASCC by Hanwin in a separate bank account from its main accounts payable account").  And last week, payment of additional security in respect of the M/V Belknight was posted in the amount of $856,871.46.  *See* Exhibit 4 at 2 (Panama Order).

In sum, based on the foregoing attachments and prior agreements to post security, Transatlantica has attached funds and received security to date in the total amount of at least $2,832,622.31 against its claims.[3]

By contrast, Transatlantica has not voluntarily agreed to post security for any part of Hanwin's claims against it arising from the *M/V TAC IMOLA* voyage.  And, when Hanwin commenced its own Rule B attachment proceeding against Transatlantica seeking security for its claims, Transatlantica engaged in an attempted fraudulent conveyance – after learning that Hanwin had filed its action – in order to disclaim ownership of the property it had aboard the *M/V TAC IMOLA* and attempt to avoid service of Rule B process.  *See* Exhibit 5.  Following an emergency conference between the parties and the Court in Massachusetts, the Massachusetts court compelled Transatlantica to post security in the amount of $564,283.35 in order for the Vessel to leave port.  *See* Exhibit 6.

---

[3] The amount of security Transatlantica has received is also already almost $1 million more than the amount it asserted as a claim in the actions pending in New Jersey and Maryland, where Transatlantica sought only $1,984,913.38 in respect of its claims.  *See* Exhibit 3 (ASCC Answer) at ¶ 3.d.

In sum, Hanwin remains undersecured on its claims against Transatlantica, in the amount of $3,068,047.67 (consisting of Hanwin's current estimate of damages, *see supra*, less the $564,283.35 posted by Transatlantica to the Massachusetts court).

In summary, with this action, Transatlantica has filed five Rule B attachment proceedings against Hanwin to date since May 27, 2022. Most recently, Transatlantica attached the bunkers aboard the M/V *Belknight* last week, prior to filing this action in New Orleans concerning the same Vessel and after it received more than $850,000 in security to permit that Vessel to depart Panama and come to New Orleans, only to disrupt its operations again. The four prior actions may be summarized as follows:

| Case No. | Jurisdiction | Date Filed | Status |
| --- | --- | --- | --- |
| 22-cv-1275 | District of Maryland | May 27, 2022 | Transatlantica's writs of attachment against third party garnishees including Canton Terminals, threatened continued cargo discharge operations in Baltimore.<br><br>Intervenor cargo receiver Hawthorne Industrial Products, Inc. applied for and received a court order on July 7, 2022 permitting continued cargo discharge operations of the M/V TAC IMOLA and the M/V INDIGO SPICA. *See* Exhibit 7.<br><br>No property has been attached in this proceeding and it is subject to dismissal. |
| 22-cv-3348 | District of New Jersey | June 1, 2022 | After Transatlantica attached the fuel bunkers aboard a third vessel, the M/V INDIGO SPICA, Hanwin posted $195,857.22 in respect of Transatlantica's disputed claims. The parties then filed a consent motion to stay the action pending London arbitration which was entered by the Court on June 10,2022. *See* Exhibit 8. |
| 22-cv-1983 | Southern District of Texas | June 17, 2022 | Transatlantica filed yet another action in the Southern District of Texas under Rule B, attaching funds committed to third parties, paid by Hanwin to American Shipping and Chartering Corp., its port agent for services to be provided to Hanwin-chartered vessels calling in |

| Case No. | Jurisdiction | Date Filed | Status |
|---|---|---|---|
| | | | ports in the United States. ASCC has appeared and, on July 25, 2022, filed its Answer and Motion to Vacate or Modify the Rule B attachment, but the Texas court has not set a Rule E hearing as yet. *See* Exhibit 3. |
| N/A | Panama | July 15, 2022 | We understand that bunkers aboard the *M/V Belknight* were attached in or about July 15, 2022. Hanwin is contesting the attachment on the grounds that this vessel was chartered by a separate company, City Expansion Limited, as to which Transatlantica has no claim.<br><br>By order dated July 29, 2022, the Panamanian Court permitted the *M/V Belknight* to depart for New Orleans, upon Hanwin Shipping Company Limited's provision of $856,871.46. *See* Exhibit 4. |

## ARGUMENT

**I.  TRANSATLANTICA CANNOT MEET ITS BURDEN UNDER RULE B AND RULE E TO MAINTAIN THE WRITS OF ATTACHMENT**

**A.  Applicable Law**

The requirements of Rule B are well-summarized in *Space Shipping Ltd. v. St Shipping & Transp. PTE Ltd.*

> Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure allows a maritime attachment of property when a plaintiff satisfies the applicable filing, notice, and service requirements and shows that: (1) the plaintiff has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006) (abrogated on other grounds by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009)); *see also* Fed. R. Civ. P., Supp. Adm. Rule B.

*Space Shipping*, No. 17-10570, 2017 U.S. Dist. LEXIS 173593, at *2-3 (E.D. La. Oct. 19, 2017).

As noted by this Court, at a Rule E(4)(f) post-arrest hearing, "[t]he attachment must be vacated if

the plaintiff fails to sustain his burden of showing that the requirements of Rules B and E are satisfied. . . [and] the attaching party must present sufficient evidence to show probable cause for the attachment.

B.   **Transatlantica Has Not Shown Probable Cause to Maintain the Attachment by Showing that There is Hanwin Property in the District, Where Hanwin Has Not Chartered the Belknight and Transatlantica Has Not Made Sufficient Alter Ego Allegations**

Here, Transatlantica has not shown probable cause to maintain the attachment over the *M/V Belknight* or any alleged garnishees, because Transatlantica's alter ego allegations are entirely deficient – and Transatlantica has therefore not shown that there is likely to be property of Hanwin within the district.

As Transatlantica should know from its litigation (last week) seeking to attach property aboard the *M/V Belknight* in Panama, the *Belknight* is not chartered by Hanwin, but instead by another company that shares the same owners. As Transatlantica should know from its litigation (last week) seeking to attach property aboard the *Belknight* in Panama, the Belknight is not chartered by Hanwin, but instead by another company that shares the same owners. Transatlantica nonetheless incorrectly names "Hanwin" and mentions in a conclusory assertion that Hanwin has "alter egos" – Hanwin Shipping Company Limited, Shanghai Hanying International Logistics Co. and City Expansion Limited – that "all share the same owners."

This allegation is insufficient to allege a theory of alter ego liability to maintain an attachment over alleged garnishees of the *Belknight* in the Fifth Circuit. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan (Bridas II)*, 447 F.3d 411, 416 (5th Cir. 2006) ("The alter ego doctrine, like all variations of piercing the corporate veil doctrine, is reserved for exceptional cases."). Generally, the corporate veil is pierced "only if (1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a

fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan (Bridas I)*, 345 F.3d 347, 358-59 (5th Cir. 2003).

Here, there are no sufficient facts of "complete control" or that any such control was "used to commit a fraud or wrong" by Hanwin against Transatlantica, to permit a conclusion that the attachments should extend – not only to Hanwin – but to companies associated with Hanwin that allegedly "share the same owners."

Without those necessary allegations, there is no probable cause to believe that there is any Hanwin property within or coming into the district, and Transatlantica's attachments should therefore be dismissed. *See supra; see also Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008), *cert denied*, 555 U.S. 1102 (2009) (affirming dismissal of Rule B attachment where the alter ego allegations were "supported merely by generalized allegations in the attorney-verified complaint" and "documentation showing common business addresses and management," which is more than Transatlantica has alleged here); *Vitol, S.A. v. Capri Marine, LTD*, No. MJG-09-3430, 2010 U.S. Dist. LEXIS 143095, at *14 (D. Md. Dec. 23, 2010) (dismissing Rule B claim where plaintiffs had made generalized allegations that companies were interconnected without sufficiently pleading alter ego liability); *Kola Shipping Ltd. v. Shakti Bhog Foods Ltd.*, No. 08-cv-8817, 2009 U.S. Dist. LEXIS 14392, at *5 (S.D.N.Y. Feb. 24, 2009) (declining to issue Rule B attachment against new defendants where alter ego allegations were "founded on generalized allegations in the attorney-verified amended complaint of common management and ownership and a number of instances in which one defendant acted as a guarantor for another.").

II. **IN THE ALTERNATIVE, TRANSATLANTICA SHOULD BE REQUIRED TO POST COUNTER-SECURITY TO THE EXTENT OF SECURITY PREVIOUSLY POSTED OR ATTACHED BY HANWIN**

Should the Court find that Transatlantica's writs of attachment should nonetheless be maintained, Hanwin requests that the Court urgently set the amount of security required to permit continued cargo operations for the *M/V Belknight* so that it does not miss its anticipated berthing window on Monday August 8, 2022; and, in line with principles of admiralty law and equity, the Court should vacate the Transatlantica writs of attachment under the circumstances presented by this case, unless Transatlantica posts counter-security in an amount equivalent to the security previously posted by Hanwin in these cases. *See Result Shipping Co. v. Ferruzzi Trading USA*, 56 F.3d 394, 400 (2d Cir. 1995) ("[T]he purpose of Rule E(7) is to equalize, where not otherwise inequitable, the positions of the plaintiff and defendant with respect to security."); *Seatrade Grp. N.V. v. 6,785.5 Metric Tons of Cement*, No. H-05-2771, 2007 U.S. Dist. LEXIS 6936, at *4 (S.D. Tex. Jan. 31, 2007) (finding that courts should consider, among other factors, "the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection.").

## CONCLUSION

Hanwin respectfully requests that the court set a prompt hearing pursuant to Supplemental Admiralty Rule E(4)(f) requiring Transatlantica to show why the attachments should not be vacated or other relief granted consistent with these rules; and in the alternative moves for the Court to set security pursuant to Rule E(5)(a) in order to avoid any disruption to the vessel now in the Eastern District of Louisiana which is seeking to berth and continue cargo operations by Monday August 8, 2022, and for the Court to set counter-security under Rule E(7)(a) in respect of Hanwin's counterclaim against Transatlantica, as evidenced in Hanwin's

verified complaint filed in Massachusetts attached to this motion, arising from Transatlantica's breaches of the underlying *M/V Tac Imola* charterparty between the parties, and for such other and further relief as is just and proper.

        Respectfully submitted,

        *s/ David B. Sharpe*
        David B. Sharpe, T.A. (LA Bar No. 20370)
        dsharpe@lawla.com
        Alan R. Davis (LA Bar No. 31694)
        adavis@lawla.com
        Adelaida Ferchmin (LA Bar No. 28959)
        aferchmin@lawla.com
        LUGENBUHL, WHEATON, PECK,
        RANKIN & HUBBARD
        601 Poydras Street, Suite 2775
        New Orleans, LA 70130
        Telephone: (504) 568-1990
        Facsimile: (504) 310-9195

        and

        Todd G. Crawford (LA Bar No. 21050)
        tcrawford@lawla.com
        LUGENBUHL, WHEATON, PECK,
        RANKIN & HUBBARD
        801 Travis Street, Suite 1800
        Houston, Texas 77002
        Telephone: (713) 222-1990
        Facsimile: (713) 222-1996

        and

        Brian P. Maloney (*Pro Hac Vice to be filed*)
        maloney@sewkis.com
        Bruce G. Paulsen (*Pro Hac Vice to be filed*)
        paulsen@sewkis.com
        SEWARD & KISSEL LLP
        One Battery Park Plaza
        New York, NY 10004
        Telephone: (212) 574-1200
        Facsimile: (212) 480-8421

-12-

**Certificate of Service**

I hereby certify that this document was served upon all counsel of record this 4th day of August, 2022, via email and by operation of the Court's CM/ECF system.

*s/ David B. Sharpe*
David B. Sharpe