IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Transatlantica Commodities Pte Ltd., | * | |
| Plaintiff, | * | Civil Action No.: 22-cv-2454-EEF-JVM |
| v. | * | |
| Hanwin Shipping Limited, | * | IN ADMIRALTY |
| Defendant, *in personam* | * | |
| and | * | |
| Coastal Cargo Company, L.L.C., et al, | * | |
| Garnishees. | * | |

\* \* \* \* \* \* \* \* \* \* \*

## TRANSATLANTICA MEMORANDUM OPPOSING MOTION TO VACATE AND FOR COUNTER-SECURITY

This Court now should deny Hanwin Shipping Limited's ("Hanwin's") motion – except that, this Court also now should (as Hanwin requests) set the amount of security for Hanwin to post.

### Transatlantica's Attachment is Proper

Attachment under Supplemental Rule B is proper when "(1) the plaintiff has a valid *prima facie* admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment."

*MARMAC, LLC v. InterMoor, Inc.*, 566 F. Supp. 3d 559, 579 (E.D. La. 2021), *appeal dismissed sub nom. Marmac, L.L.C. v. US Wind, Inc.*, No. 21-30662, 2021 WL 8201393 (5th Cir. Dec. 30, 2021). Hanwin agrees that (1) Transatlantica has a valid *prima facie* admiralty claim against

Hanwin, which (2) cannot be found within this District, and (4) there is no statutory or maritime law bar to the attachment.

**The Panama Maritime Court Confirmed Last Friday,
August 5th, that the M/V BELKNIGHT is Hanwin-Chartered**

Three days ago, Friday, August 5th, the Panama Maritime Court, First Department issued the opinion which is **Exhibit A hereto**. The Panama Court confirms that the BELKNIGHT is under charter to Hanwin.

The opinion follows Transatlantica's attachment in Panama (which Hanwin's motion reports) of the bunkers aboard the BELKNIGHT. Hanwin insisted to the Court that the vessel's charterer was a separate company, "Hanwin Shipping Company Limited."[1] But, as a part of the attachment action, the Panama court ordered the BELKNIGHT master to provide access to shipboard documents, including to emails. The Panama Court observed (rough translation to English) that there were "innumerable emails indicating that the charterer of the M/N BELKNIGHT is the company HANWIN SHIPPING LIMITED, and therefore, the owner of the fuels seized aboard the ship."

Although the Panama Court opinion is in Spanish (translation to English requiring more than the short time between Friday's issue of the opinion and the "prompt hearing" this Court set for this morning the following Monday), the emails which Transatlantica presented to the Panama Court are in English, **Exhibit B hereto**.

---

[1] Hanwin needs to get its stories together – Hanwin's motion (in the table, at 7) describes the Panama action as one where "Hanwin is contesting the attachment on the grounds that this vessel was chartered by a separate company, City Expansion Limited . . . ." But again, the Panama action was about Hanwin's claim that the "real" charterer was Hanwin Shipping Company Limited (not "Hanwin Shipping Limited").

So, it is not a good faith question whether the BELKNIGHT is Hanwin-chartered - - rather than by "City Expansion Limited" as Hanwin claims here (presenting no supporting documentation) - - or by "Hanwin Shipping Company Limited" as Hanwin claimed to the Panama Maritime Court.

The BELKNIGHT is - as decided by the Panama Maritime Court - chartered by Hanwin, proving Transatlantic's certain good faith allegations here that "(3) the defendant's property may be found within the district."

In Panama, there was a $856,871.46 deposit made with the Panama Court for release of the BELKNIGHT's bunkers (Hanwin motion at 4); with the decision, Hanwin ( the real Hanwin) has asked, through its lead counsel in Hong Kong (Ince & Co.), to remove the deposit amount from the Panama Court registry and have it deposited in the Ince-kept escrow account where (quoting from Hanwin's motion, at 4-5, "Hanwin has already posted $995,857.22 to an escrow account maintained by Ince & Co. in respect of the London arbitration under escrow agreements made between the parties (see Ex. 2)."

Transatlantica and Hanwin/Ince counsel are working on this further deposit to the Ince escrow; if the deposit is made, the escrow account will hold $1,852,728.68 – which is $2,714.544.06 short of the $4,567,272.74 for which Transatlantica seeks security here – and in the other proper Rule B actions Transatlantica has brought.

As to the propriety including merits of those actions, notwithstanding the unfortunate Hanwin language about them, each Court has upheld the actions. The parties obviously disagree about the damages which each allegedly (by the other) caused. There also is no part of Rule B (and Hanwin cites none, and no opinions) which makes improper Transatlantica continuing to attach and garnish Hanwin property, until Hanwin fully secures Transatlantica.

## Under Hanwin's Argument, Though – <u>Hanwin Lacks Standing to Make its Motion</u>

Notwithstanding the Panama Court opinion (which is a big "notwithstanding"), as to factor (3), if as Hanwin insists the has been no Hanwin property attached – because there is no Hanwin property in the District, Hanwin has no standing to make its motion and to demand any "prompt hearing."  Supplemental Rule E(4)(f) provides in pertinent part that:

> (f) Procedure for Release From Arrest or Attachment. Whenever property is arrested or attached, **<u>any person claiming an interest in it</u>** shall be entitled to a prompt hearing . . . .

(Emphasis added).  First and fundamentally no garnishee has reported that any property has been attached – and Hanwin does not claim that any property has been attached.  Second, if any property has been attached, **<u>Hanwin claims no interest in it</u>**; instead it says that if any property is attached, that property is someone else's (payments to be made by/ or the property of Hanwin affiliate "City Expansion Limited"; interestingly, a claim that any property is of "affiliate" "Hanwin Shipping Company Limited" as Hanwin insisted in Panama, is nowhere seen here).

Perhaps "City Expansion Limited" could make the Supplemental Rule E(4)(f) motion, if there actually **<u>was</u>** any of its property attached, but under Hanwin's arguments, Hanwin is not entitled to the claimed "prompt hearing":

> The court finds that the decision on standing resolves the motion to vacate and, thus, does not address Garnishees' arguments. The court agrees that Garnishees lack standing, not in a constitutional sense, but in the sense that Supplemental Rule E(4)(f) provides a procedure for persons claiming interest in attached property to secure its release. In this action, Plaintiff has not identified any specific property in the hands of or subject to the control of Garnishees that belongs to Defendants. As a result, no property has been attached. The writs of attachment do not identify specific property, referring generally to "any tangible or intangible personal property" belonging to Defendants that is in the hands of Garnishees.59 In their answers, Garnishees represented that they do not have possession, custody, or control of any property belonging to Defendants. Thus, Garnishees can meet neither the attachment nor the interest elements of Rule E(4)(f). Rule E(4) (f) is simply not applicable at this time.

> FN: Because Garnishees are not persons claiming interest in attached property, they are not entitled to a prompt hearing under Supplemental E(4)(f).

*Agrocooperative Ltd. v. Sonangol Shipping Angola (Luanda) Limitada*, No. CIV.A. H-14-1707, 2015 WL 138114, at *7 (S.D. Tex. Jan. 8, 2015).

## Hanwin Fails Any Requirement for Transatlantica to Post <u>Countersecurity</u>

The Court also should note Hanwin's failure to cite any rule or opinion, supporting its demand to this Court, that Transatlantica post further countersecurity.

That is because there is none.

Supplemental Rule E(7) ("Security on Counterclaim") states in pertinent part:

> (a) When a person who has given security for damages in the original action **asserts a counterclaim** that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given, unless the court directs otherwise.

(Emphasis added). Hanwin has never asserted any counterclaim in this action – or any of the others Transatlantica has brought.

This is despite the fact that Hanwin appeared generally in the New Jersey action and filed a limited appearance in the Maryland action.

What Hanwin did – contrary to Fed. R. Civ. P. 13 (compulsory counterclaims) and Supplemental Rule E(7) – was to bring its separate action in Boston – which is really a counterclaim that Hanwin was required to bring in the Maryland action, or the New Jersey action, or both.

Transatlantica's motion to dismiss Hanwin's Boston action, on those and other grounds, is pending before the U.S. District Court, District of Massachusetts – where Transatlantica also

properly pursuant to Supplemental Rule E(7) has counterclaimed (after posting security into the Court's registry).[2]

In response to Transatlantica's counterclaim in the U.S. District Court, District of Massachusetts, Hanwin is required (but still has not) to post countersecurity, to the full amount of Transatlantica's claims - of which, as set out above, $2,714.544.06 remains to be provided by Hanwin, either in response to the Transatlantica claims in Hanwin's Boston case, in this case, or in others that Transatlantica must bring to be fully secured.

### Transatlantica Agrees, This Court Should Set Security from Hanwin

Transatlantica does not know how much Hanwin ( by whatever name it has used to do that) has deposited with the stevedores (Coastal Cargo, according to Port of New Orleans records, the BELKNIGHT to call this Wednesday at the Louisiana Avenue facility, see https://portno.force.com/mvp/s/?Berthing__c-filterId=00B1R000008d7kSUAQ , which Coast Cargo operates, *see* http://www.coastalcargogroup.com/ccla/ ) and local agents (which Transatlantica understands to be Revelle and/or Blue Water).

But Hanwin does.

Responding to Hanwin's request to the Court to set security, the Court should require Hanwin to disclose the amounts paid or to be paid. This would be the amount of security that Hanwin posts. It then can decide (or not) to make any counterclaim, to which Transatlantica will respond pursuant to Supplemental Rule E(7).

### If there Still is a Good Faith Question, This Court Should Order Jurisdictional Discovery

---

[2]  Hanwin's claim that there was a "fraudulent conveyance" is more loose and unsupported language; there was no such finding by the U.S. District Court, District of Massachusetts.

In *Schifffahrtsgesellschaft MS N Schelde MBH & Co. KG v. Pola Mar. Ltd.*, No. CV 16-10726, 2016 WL 3667638, at *3 (E.D. La. July 11, 2016), this Court considered claims similar to Hanwin's here, that entities other than the defendant were involved, which were not alter egos of the defendant. If there is any good faith question about this – after the Panama Court's opinion ( and the emails from the BELKNIGHT), this Court should order as it did in the *Schifffahrtsgesellschaft MS N Schelde MBH & Co. KG* case, jurisdictional discovery, on Hanwin's claims that it is not involved with the BELNIGHT:

> Given Pola 5's assertions in its motion for vacatur, Plaintiff asks the Court to allow it to immediately conduct jurisdictional discovery. More specifically, Plaintiff requests leave to depose certain individuals and to propound written discovery to Defendants and third parties in the form of document requests, interrogatories, and requests for admissions.15 Considering all of the factors discussed herein, the Court will grant Plaintiff's motion to the limited extent that Plaintiff shall be allowed thirty (30) days from the entry date of this Order and Reasons within which to depose the master of the M/V POLA ONEGA, Mr. Anatoly Belozerov, Mr. Carlo Cepollina, and Mr. Karl Mallia. If logistics necessitate, the depositions are to be done via video conference. Finally, the interrogatories proposed by Plaintiff (Rec. Doc. 19-7) are to be propounded immediately (if Plaintiff still desires their issuance) with a written response being due within thirty (30) days of service by electronic means. Because the requests for document production and admissions proposed by Plaintiff appear overly broad and burdensome for purposes of this limited and expedited jurisdictional discovery, the Court presently declines to authorize them in their present form. If Plaintiff persists in believing such additional discovery necessary, on an expedited basis, Plaintiff may seek leave to file from the assigned magistrate judge, who shall also impose appropriate limitations designed to narrow the inquiry and render it less costly and burdensome.

In the specific context of *Rule B* attachment actions, "[w]hen one party articulates an alter ego claim and another attacks it as purportedly insufficient, the extent of a court's admiralty jurisdiction has been placed at issue, and federal common law must be consulted." *ING Bank N.V. v. M/V Portland*, IMO No. 9497854, No. 315-CV00805-JWD-RLB, 2016 WL 3365426, at *6 (M.D. La. June 16, 2016)(ordering jurisdictional discovery), citing *Sabine Towing & Transp. Co. v. Merit Ventures, Inc.*, 575 F. Supp. 1442, 1446 (E.D. Tex. 1983) (citing *Swift,* 339 U.S. at 689).

*See also Oldendorff Carriers GmbH & Co. KG v. Grand China Shipping (H.K.) Co., Ltd.*, 2012 U.S. Dist. LEXIS 145949 (S.D. Tex. 2012)(ordering jurisdictional discovery).

"Since a court's jurisdiction over an alter ego is coextensive with its jurisdictional reach over the sham (or dummy) corporation, facts relevant to an alter ego analysis are ineluctably jurisdictional in nature and often clouded at a case's inception." *ING Bank,* 2016 U.S. Dist. LEXIS 78495 at *22, citing *Dolco Invs. Ltd. v. Moonriver Dev., Ltd.*, 486 F. Supp. 2d 261, 271 (S.D.N.Y. 2007); *Wajilam Exports Singapore Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275 (S.D.N.Y. 2006).

The Fifth Circuit sets forth the following non-exhaustive list of factors that may be considered when determining whether one company dominates and controls another for alter ego purposes: (1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; (12) the subsidiary does not observe corporate formalities. *Oxford Capital Corp. v. United States,* 211 F.3d 280, 284 n. 2 (5th Cir. 2000).

As Judge Morgan writes in E.*N. Bisso & Son, Inc. v. M/V DONNA J. BOUCHARD, et al.*, No. 2:19-cv-14666-SM-JVM (E.D. La. May 3, 2020), at 8 (**Exhibit C hereto,** footnotes omitted):

> Case law confirms that "[w]hen . . . . there is . . . a factual question regarding a district court's jurisdiction, the district court must give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." "[C]ourt after court has authorized such precisely focused discovery in admiralty cases." Even more

specifically, such discovery has been authorized in the context of Rule E(4)(f) proceedings. "[M]any courts have passed upon the merits of Admiralty Rule E motions to vacate only after they first provided the party asserting jurisdiction with just such an opportunity." "[W]hile jurisdictional discovery may always be denied, the existence of a reasonable possibility of finding sufficient proof can often tip the scale in its favor," and, "[a]rguably, it may even be required in such circumstances.

This Court, again if the question remains in good faith doubt, should order jurisdictional discovery from Hanwin on the elements set out above.

## Conclusion

A Rule E(4)(f) hearing . . . . is not intended to definitively resolve the dispute between the parties; instead, the district court makes a preliminary determination of whether reasonable grounds exist for the arrest. *Naftomar Shipping and Trading Co.*, 2011 WL 888951, *3 (quoting *A. Coker & Co., LTD.*, 1999 WL 311941, * 1) (internal citations omitted). In other words, with Rule E(4)(f) hearings, courts do not make binding determinations of fact; they " 'merely hold[ ] that it is [or is not] likely' that alleged facts are true." *Id.* at *3 (quoting *Wajilam Exports Pte. Ltd. v. ATL Shipping Ltd.,* 475 F. Supp. 2d 275, 280 (S. D. N.Y. 2006) (internal citations omitted)).

Schifffahrtsgesellschaft MS N Schelde MBH & Co. KG, 2016 WL 3667638, at *2.

Transatlantica ( and the Panama Maritime Court ) has shown that it is likely, that Transatlantica's alleged facts are true. This Court accordingly now should deny Hanwin's motion and set security.

Dated: August 8, 2022.

| | |
|---|---|
| /s/ J. Stephen Simms<br>J. Stephen Simms<br>Simms Showers LLP<br>201 International Circle, Suite 230<br>Baltimore, Maryland 21030<br>Tel: 410-783-5795<br>Fax: 410-510-1789<br>Email: jssimms@simmsshowers.com | LOCAL COUNSEL<br><br>LAW OFFICE OF CARY A. DES ROCHES<br><br>By: /s/ Cary A. Des Roches<br>Cary A. Des Roches<br> #19550 225 Phosphor Avenue<br>Metairie, LA 70005<br><br>and<br><br>1100 Poydras Street, Suite 3250<br>New Orleans, Louisiana 70163<br>Telephone: (504) 235-9322 |

Facsimile: (504) 588-9750
Email: cdr@desrocheslaw.com

Counsel to Transatlantica Commodities Pte Ltd.