UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **Transatlantica Commodities Pte Ltd.,** | No.: | **22-cv-02454-EEF-JVM** |
| **v.** | c/w | **22-cv-2724** |
| **Hanwin Shipping Limited** | Ref: | **22-cv-2724** |

**DEFENDANT HANWIN SHIPPING LIMITED'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
<u>HAWTHORNE INDUSTRIAL PRODUCTS, INC.'S VERIFIED COMPLAINT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1
FACTUAL BACKGROUND .......................................................................................................... 2
PROCEDURAL HISTORY............................................................................................................. 3
ARGUMENT .................................................................................................................................. 5
I.    HAWTHORNE'S CLAIMS MUST BE DISMISSED BECAUSE HAWTHORNE HAS FAILED TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED ........................................................................................................................ 5
    A.    Standard of Review........................................................................................ 5
    B.    Hawthorne's Breach of Maritime Contract Claim Must Be Dismissed Because There Is No Privity Between Hawthorne and Hanwin ............................ 6
    C.    Hawthorne's Maritime Tort Claim Must Be Dismissed Because Hanwin Has Failed to Identify a Cognizable Duty Owed by Hanwin as Time Charterer ........................................................................................................ 8
II.    THE COURT'S JURISDICTION IN ANY EVENT IS LIMITED TO THE AMOUNT OF HANWIN PROPERTY FOUND IN THE DISTRICT ............................. 10
CONCLUSION................................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*2 Mai Mangalia Shipyard S.A. v. M/V Bonsai*,
    No. 95-3861, 2002 U.S. Dist. LEXIS 4153 (E.D. La. Mar. 5, 2002) ........................................11

*Allen v. LogistiCare Sols., LLC*,
    No. 17-cv-365, 2017 U.S. Dist. LEXIS 130479 (E.D. La. Aug. 16, 2017) ...............................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................6, 7, 9

*Barrister Constr., LLC v. Am. Zurich Ins. Co.*,
    No. 22-cv-1015, 2022 U.S. Dist. LEXIS 104725 (E.D. La. Jun. 13, 2022) ..............................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................................6

*Galloway v. Ill. Cent. R.R.*,
    No. 18-cv-14038, 2019 U.S. Dist. LEXIS 108305 (E.D. La. June 26, 2019).........................10

*Gonzalez v. Kay*,
    577 F.3d 600 (5th Cir. 2009) .............................................................................................6

*Grand Famous Shipping Ltd. v. China Navigation Co.*,
    45 F.4th 799 (5th Cir. 2022) ..........................................................................................8, 9

*Gulf Marine & Indus. Supplies, Inc. v. New Filipino Mar. Agencies, Inc.*,
    No. 01-cv-0555, 2001 U.S. Dist. LEXIS 4475 (E.D. La. Mar. 20, 2001) ..............................10

*Hyundai Merch. Marine Co. v. Grand China Shipping H.K. Co.*,
    878 F. Supp. 2d 1252 (S.D. Ala. 2012)..............................................................................11

*La. Envtl. Concepts, LLC v. BKW, Inc.*,
    No. 18-cv-12568, 2019 U.S. Dist. LEXIS 76869 (E.D. La. May 7, 2019)..............................6

*Sanderson v. H.I.G. P-XI Holding, Inc.*,
    No. 99-3313, 2000 U.S. Dist. LEXIS 10893, (E.D. La. Jul. 27, 2000) ....................................6

*Sheets v. Yamaha Motors Corp.*,
    891 F.2d 533 (5th Cir. 1990) ...........................................................................................11

*Skinner v. State Farm Fire & Cas. Co.*,
    No. 07-cv-6900, 2008 U.S. Dist. LEXIS 145179 (E.D. La. Apr. 28, 2008).........................6, 7

**Other Authorities**

Fed. R. Civ. P. 4(f) ..................................................................................................................11

Fed. R. Civ. P. 12(b)(1) ..........................................................................................................1, 7

Fed. R. Civ. P. 12(b)(2) ..........................................................................................................1, 2

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 5, 7, 8

L.R. 3.1 .......................................................................................................................................3

Supp. Rule B(1)(a) ...................................................................................................................10

Supp. Rule E(5)(a) .....................................................................................................................4

Supp. Rule E(8) ............................................................................................................1, 4, 10

Defendant Hanwin Shipping Limited ("Hanwin"), through its undersigned counsel and subject to its restricted appearance under Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (the "Supplemental Rules"), moves to dismiss Hawthorne Industrial Products, Inc.'s ("Hawthorne") Verified Complaint in its entirety pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(5) and 12(b)(6).

## PRELIMINARY STATEMENT

By this action, Plaintiff Hawthorne seeks to recover for damages purportedly sustained by cargo loaded aboard two vessels – the M/V TAC IMOLA and the M/V INDIGO SPICA (the "Vessels") – which were chartered by Hanwin from disponent owner Transatlantica Commodities Pte Ltd. ("Transatlantica")[1] during the relevant time period. But Hawthorne's sparse Complaint, which alleges claims for breach of maritime contract and maritime tort, does not pass muster.

*First*, Hawthorne's breach of maritime contract claim fails because Hawthorne has not alleged the existence of any contract with Hanwin. Absent such privity, Hawthorne's contract claim must be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

*Second*, Hawthorne has not sufficiently alleged its maritime tort claim because it has failed to allege or identify what duty Hanwin (as time charterer) owed to Hawthorne, let alone how that duty was breached. Indeed, governing law dictates that, absent a sufficient allegation of negligent acts by Hanwin within a traditional sphere of activity over which Hanwin exercises control, Hanwin is not liable to Hawthorne in tort for acts taken outside those spheres absent an allegation based on contract or custom as between those parties. Hawthorne's formulaic recitation of the elements of a tort claim, without more, does not satisfy its burden.

---

[1] Transatlantica is not a party to Hawthorne's action, but is instead a plaintiff in a member case with which this matter has been consolidated. *See Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Ltd. et al.*, No. 22 Civ. 2454 (E.D. La.).

1

*Third*, because Hawthorne has failed to establish personal jurisdiction over (or properly serve) Hanwin, should any of Hawthorne's claims survive its recovery in this Rule B matter, Hawthorne's recovery is limited to the value of Hanwin's property found within this district – which does not include amounts held by third parties.  Indeed, where those funds were already transmitted as payment for services rendered or to be rendered, they are no longer Hanwin property.  As such, Hanwin moves for dismissal of Hawthorne's *in personam* claims pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and 12(b)(5) for insufficient service of process.

For these reasons, Hanwin respectfully requests that the Court dismiss Hawthorne's Complaint with prejudice.

## FACTUAL BACKGROUND

### The Parties

Plaintiff Hawthorne is a Florida corporation engaged in the business of importing wood products from overseas as a consignee for third party beneficial owners of cargo.  *See* Doc. 1 (Compl.) ¶ 3.  Defendant Hanwin is a China-based company which, in late 2021, chartered the M/V TAC IMOLA and the M/V INDIGO SPICA from Transatlantica.  *See id*. ¶¶ 6, 8.

### The Fire Aboard the M/V TAC IMOLA

In November 2021, the TAC IMOLA was loaded with plywood, along with other cargo, for carriage to Baltimore, Maryland.  *See id*. ¶¶ 11-12.  At some point during the respective voyage, that plywood cargo caught fire.  *See id*. ¶¶ 25-30.  As a result of the fire, the damaged cargo required special handling, requiring the TAC IMOLA to make unscheduled port calls to discharge portions of the damaged cargo.  *See id*. ¶¶ 33-36.

Hanwin and Transatlantica are presently engaged in both London arbitration and numerous U.S. actions (including in this District) concerning each party's respective liability for the fire

aboard the TAC IMOLA.[2]  Notably, in those separate proceedings, Hanwin has alleged that the cargo fire was caused by Transatlantica's own lack of due diligence in loading, stowing, and securing the cargo.[3]

### *Damage to Cargo Aboard the M/V INDIGO SPICA*

On or about April 22, 2022, the M/V INDIGO SPICA, another ship Hanwin time chartered from Transatlantica, also loaded a large quantity of plywood for carriage to Baltimore, Maryland. *See* Compl. ¶ 47.  Upon arrival in Baltimore on or about July 19, 2022, it was determined that the plywood suffered extensive damage during the voyage. *See id*. ¶ 52.

## PROCEDURAL HISTORY

### *The Instant Litigation*

On August 18, 2022, Hawthorne filed the instant action asserting claims for (i) breach of maritime contract, (ii) maritime tort, and (iii) Rule B attachment stemming from the damage to the plywood aboard the Vessels.[4] *See* Doc. 1. Hawthorne is claiming over $34,500,000 in damages plus interest, fees, and costs.

On August 19, 2022, this Court granted Hawthorne's motion for a writ of attachment and garnishment for Hanwin property in the form of bunkers, lubricants, water, food, and other cash

---

[2] *See, e.g.*, *Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Ltd. et al.*, No. 22 Civ. 1275 (D. Md.); *Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Ltd. et al.*, No. 22 Civ. 3348 (D.N.J.); *Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Ltd. et al.*, No. 33 Civ. 1983 (S.D. Tex.); *Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Ltd. et al.*, No. 22 Civ. 2454 (E.D. La.); *Hanwin Shipping Ltd. v. Transatlantica Commodities Pte Ltd., et al.*, No. 22 Civ. 11182 (D. Mass.).

[3] *See, e.g.*, Amended Compl., *Hanwin Shipping Ltd. v. Transatlantica Commodities Pte Ltd., et al.*, No. 22 Civ. 11182 (D. Mass.), Doc. 32.

[4] On September 1, 2022, Judge Fallon ordered pursuant to LR 3.1 that Hawthorne's case against Hanwin be consolidated with Transatlantica's action, Case No. 2:22-cv-02454, as a collateral proceeding given that the two actions involve the same cargo fire aboard the TAC IMOLA. *See* Docs. 19, 35.

or credits aboard the INDIGO SPICA and the M/V BELKNIGHT, another ship chartered by Hanwin, which had come into port in New Orleans.  *See* Docs. 6, 8.

Following a Rule E hearing on August 26, 2022, the Court granted Hanwin's Motion to Release Writs of Maritime Attachment & Garnishment and ordered Hanwin to post $360,000 as security by August 29, 2022.  *See* Doc. 32.  On August 29, 2022, Hanwin complied and, subject to a restricted appearance under Rule E(8), deposited $455,578.01 into the client trust account of its counsel as a special bond under Supplemental Rule E(5)(a) in favor of Hawthorne.  *See* Doc. 33.[5]  On August 31, 2022, counsel for Hawthorne requested that Hanwin waive service of process in this action, to which Hanwin declined.  To date, Hanwin has not yet been served.

## *Hawthorne's Other Litigations*

In addition to the $455,578.01 Hawthorne has received as security in the instant action, Hawthorne has previously sought and received security for its claims for cargo damage aboard the Vessels.  On June 6, 2022, Hawthorne filed suit in the District of Maryland in an action styled *Hawthorne Industrial Products Inc. v. M/V TAC IMOLA et al.*, No. 22-cv-01376, and arrested the TAC IMOLA under Supplemental Rule C.  In that complaint, Hawthorne sued the head owners of the TAC IMOLA – Ratu Shipping Co. SA, Nisshin Shipping Co Ltd, and Fleet Management Ltd-HKG – seeking recovery on its claims for cargo damage.[6]  On June 13, 2022, as reported by Hawthorne in its motion for release of the TAC IMOLA, a letter of undertaking was issued by The

---

[5] On August 26, 2022, the parties agreed to a security amount of $455,578.01 after Revelle and Coastal informed Hanwin that they held additional funds following a hearing earlier that day in which the Court had set the security amount at $360,000, which Hawthorne claimed constituted property of Hanwin within the district.  Hanwin deposited funds under protest in order to release vessels from attachment but reserved its rights to contest the amount of Hanwin property found within the district, and accordingly to challenge the amount of security properly allowable under Supplemental Rule E.

[6] On July 8, 2022, Hawthorne amended its complaint to name Transatlantica and Hanwin. See Amended Compl., *Hawthorne Industrial Products Inc. v. M/V TAC IMOLA et al.*, No. 22 Civ. 01376 (D. Md.) (Doc. 29).

4

Britannia Steam Ship Insurance Association of Europe securing the claim of Plaintiff conditioned to answer the judgment of the Court. *See* Request for Release of Vessel from Arrest, *Hawthorne Industrial Products Inc. v. M/V TAC IMOLA et al.*, No. 22 Civ. 01376 (D. Md.) (Doc. 17). The TAC IMOLA was released from arrest on June 14, 2022. *See* Order, *Hawthorne Industrial Products Inc. v. M/V TAC IMOLA et al.*, No. 22 Civ. 01376 (D. Md.) (Doc. 18).

On September 7, 2022, following the initiation of the instant action, Hawthorne also filed suit in the Southern District of Texas in an action styled *Hawthorne Industrial Products, Inc., v. Hanwin Shipping Limited*, et al., No. 22 Civ. 03035, seeking further security for its claims for cargo damage. In the Texas action, Hawthorne is seeking to attach purported property of Hanwin in the form of $979,893.22 in funds in the possession of American Shipping and Chartering Corp. ("ASCC"). The initial conference for the Texas Action is currently scheduled for December 8, 2022.[7]

**ARGUMENT**

**I.   HAWTHORNE'S CLAIMS MUST BE DISMISSED BECAUSE HAWTHORNE HAS FAILED TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED**

**A.   Standard of Review**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

---

[7] In a related action concerning the same property brought by Transatlantica, the Texas court has already held an evidentiary hearing and indicated that these funds are not Hanwin property in the district on the basis of the facts adduced at that hearing from a representative of ASCC, who testified that upon receipt from Hanwin, those funds were ASCC property. *See* Dkt. 40 in *Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Limited et al.*, Case No. 22-cv-1983 (S.D. Tex.) (Minute Entry Order) (stating in relevant part that "[t]he Court held an evidentiary hearing on September 9, 2022 on Garnishee American Shipping and Chartering Corporation's Motion to Vacate or Modify the Rule B Order (Dkt. No. 15). The Court heard testimony from Garnishee's witness, Lutz Knickrehm. The parties conducted direct and cross-examination of Mr. Knickrehm. The parties then made oral arguments. For the reasons stated on the record, the Court tentatively granted Garnishee's motion by finding the money at issue is the not the property of Defendant, Hanwin Shipping Limited."). Transatlantica and Hanwin have since engaged in post-hearing briefing and the Court's final ruling on this question is expected shortly.

on its face." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 663). By contrast, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *see also La. Envtl. Concepts, LLC v. BKW, Inc.*, No. 18-cv-12568, 2019 U.S. Dist. LEXIS 76869, at *5 (E.D. La. May 7, 2019) (citing *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014)) ("[I]n deciding whether dismissal is warranted, [courts] will not accept conclusory allegations in the complaint as true.").

### B. Hawthorne's Breach of Maritime Contract Claim Must Be Dismissed Because There Is No Privity Between Hawthorne and Hanwin

Hawthorne's first cause of action for breach of maritime contract must be dismissed because Hawthorne has not alleged privity of contract with Hanwin. *See Barrister Constr., LLC v. Am. Zurich Ins. Co.*, No. 22-cv-1015, 2022 U.S. Dist. LEXIS 104725, at *5 (E.D. La. Jun. 13, 2022) (granting motion to dismiss breach of contract claim due to lack of privity); *BKW*, 2019 U.S. Dist. LEXIS 76869, at *17-18 (same); *Skinner v. State Farm Fire & Cas. Co.*, No. 07-cv-6900, 2008 U.S. Dist. LEXIS 145179, at *6 (E.D. La. Apr. 28, 2008) (same).

"To assert a cause of action for breach of contract, [a party] must prove both the existence of a contract and privity." *Barrister*, 2022 U.S. Dist. LEXIS 104725, at *5 (quoting *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 888 (5th Cir. 2002)); *see also Sanderson v. H.I.G. P-XI Holding, Inc.*, No. 99-3313, 2000 U.S. Dist. LEXIS 10893, at *7-8 (E.D. La. Jul. 27,

6

2000) ("It is beyond dispute that privity between a plaintiff and defendant is necessary to the maintenance of an action on a contract."). Here, however, the Complaint fails to identify *any* contract – let alone a contract to which both Hawthorne and Hanwin are parties. *See* Compl. ¶¶ 54-56. Instead, the Complaint contains a single, vague allusion to "contracts of carriage," without identifying any agreements or contractual provisions that Hanwin purportedly breached. *See* Compl. ¶ 56.[8]

This threadbare allegation is precisely the type of conclusory statement that requires dismissal under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678. Further, courts in this district have likewise dismissed breach of contract claims due to a lack of contractual privity under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. *See, e.g., Allen v. LogistiCare Sols., LLC*, No. 17-cv-365, 2017 U.S. Dist. LEXIS 130479, at *4-5 (E.D. La. Aug. 16, 2017) (dismissing breach of contract claim under Fed. R. Civ. P. 12(b)(1) because contractual privity is the "basis for subject matter jurisdiction" and "it is [p]laintiff's burden to demonstrate the existence of this privity"); *Skinner*, 2008 U.S. Dist. LEXIS 145179, at *6 (dismissing a breach of contract claim under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because "[w]ithout privity of contract" the plaintiff "lacks standing . . . and has failed to state a claim for which relief may be granted"). Under either Rule 12(b)(1) or 12(b)(6), Hawthorne's claim for breach of maritime contract is facially deficient and must be dismissed.

---

[8] Insofar as Hawthorne is relying on its status as consignee under certain bills of lading that may govern their cargo, Hawthorne well knows that, among other deficiencies, these agreements are likely to be subject to mandatory arbitration and cannot be litigated in this forum. *See, e.g.*, Doc. 22, Vessel Interests' Motion to Stay in Favor of Arbitration, *Hawthorne Indus. Prods. v. M/V TAC IMOLA*, Case No. 22-cv-1376 (June 17, 2022). Hanwin reserves its rights in that regard, as no such contracts have been identified in Hawthorne's complaint.

7

### C. Hawthorne's Maritime Tort Claim Must Be Dismissed Because Hanwin Has Failed to Identify a Cognizable Duty Owed by Hanwin as Time Charterer

Similarly, Hawthorne's second cause of action for maritime tort must also be dismissed under Rule 12(b)(6) because Hawthorne has failed to identify the breach of a valid duty that Hanwin, as time charterer, owed to Hawthorne.

A charter party is a maritime contract that describes the "arrangements and contractual engagements entered into when one person (the 'charterer') takes over the use of the whole of a ship belonging to another (the 'owner')." *Grand Famous Shipping Ltd. v. China Navigation Co.*, 45 F.4th 799, 802 (5th Cir. 2022). There are three primary types of charter parties—voyage charters, time charters, and demise or bareboat charters—but relevant here is the time charter, which is "used where the charterer's affairs make it desirable for him to have tonnage under his control for a period of time, without undertaking the responsibilities of ship navigation and management or the long-term financial commitments of vessel ownership." *Id.* at 802-03. Therefore, under a time charter, the time charterer, here Hanwin, engages a vessel to carry cargo for a specified duration, but the duties related to day-to-day management of the vessel remain with the shipowner, here Transatlantica as disponent owner. *Id.* at 803.

With respect to third parties, like Hawthorne, with whom there is no contractual relationship, the duties of a time charterer are well defined and are limited to certain "spheres" of activity. *See Grand Famous*, 45 F.4th at 805-06 (noting that time charterers only owe a duty "to avoid negligent actions within the sphere of activity over which [they] exercise[] at least partial control") (quoting *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1520 (5th Cir. 1996) (overruled on other grounds)). The traditional spheres of activity in which a time charterer exercises control and therefore owes a duty include "choosing the vessel's cargo, route, and general mission, as well as

8

the specific time in which the vessel will perform its assignment." *Id.* at 806 (quoting *Hodgen*, 87 F.3d at 1520).

The law in this Circuit is clear that "a time charterer owes no duty beyond these spheres' unless the parties 'vary the traditional assignment of control by contract or custom.'" *Id.* at 806 (quoting *Hodgen*, 87 F.3d at 1520); *see e.g.*, *id.* at 806-07 (holding that time charterer could not be held liable in tort for a collision because the time charterer did not owe a duty to vet the vessel's safety management protocols prior to executing the time charter).

Here, Hawthorne alleges that Hanwin is liable in maritime tort because of Hanwin's "failure to make the vessels seaworthy, failure to exercise due care for the custody of the cargo, breach of bailment, conversion, misinformation, and reckless and gross negligence." *See* Compl. ¶ 59. With respect to Hawthorne's first two claims – failure to make the vessels seaworthy and failure to exercise due care for the custody of the cargo – the general rule under traditional principles of admiralty law is that "a time charterer who has no control over the vessel[] assumes no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise." *Grand Famous*, 45 F.4th at 806 (quoting *In re P & E Boat Rentals, Inc.*, 872 F.2d 642, 647 (5th Cir. 1989)). Given that Hawthorne has failed to plead any facts suggesting that Hanwin and Transatlantica intended for Hanwin to assume liability for the duties, it has failed to state a claim for relief under either theory.

Further, Hawthorne's maritime tort claim is also deficient because the Complaint fails to identify specific negligent acts by Hanwin that are within a traditional sphere of activity over which Hanwin exercises control. Hanwin's "formulaic recitation of the elements" of its maritime tort claim is insufficient and therefore must be dismissed. *See* Doc. 1 ¶¶ 57-59; *Iqbal*, 556 U.S. at 678.

## II. THE COURT'S JURISDICTION IN ANY EVENT IS LIMITED TO THE AMOUNT OF HANWIN PROPERTY FOUND IN THE DISTRICT

Finally, the Court's jurisdiction in this matter is limited to the amount of security posted in this matter (presently $455,578.01, *see* Doc. 33) subject to a factual determination of which portion of that property actually reflects Hanwin property "found in the district." As noted above, Hanwin has filed a restricted appearance in this action under Rule E(8); it has not submitted to the jurisdiction of this Court, and has not yet been served by Hawthorne. Indeed, in its Complaint, Hawthorne affirmatively disclaimed in personam jurisdiction over Hanwin as required by Rule B. *See* Doc. 1 ¶ 62; Doc. 1-4 (declaration of Hawthorne's attorney that defendants cannot be found within the district). Thus, Hawthorne's recovery in this Rule B action, if any, would be limited to property found within this district. *See* Supp. Rule B(1)(a); *see also Gulf Marine & Indus. Supplies, Inc. v. New Filipino Mar. Agencies, Inc.*, No. 01-cv-0555, 2001 U.S. Dist. LEXIS 4475, at *6-7 (E.D. La. Mar. 20, 2001) (noting that "[u]nless the defendant is personally served with process, the plaintiff's recovery will be limited to the value of the property attached").

Notably, Hawthorne has not established any grounds for this Court to exercise personal jurisdiction over Hanwin, which is a Chinese company with no U.S. operations. *See* Compl. ¶ 6. "A federal district court may exercise personal jurisdiction over a non-resident defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *See Galloway v. Ill. Cent. R.R.*, No. 18-cv-14038, 2019 U.S. Dist. LEXIS 108305, at *8 (E.D. La. June 26, 2019) (Lemelle, J.) (dismissing claim for lack of personal jurisdiction). To satisfy Louisiana's long-arm statute, a plaintiff must "demonstrate that: (1) there are sufficient (i.e., not random, fortuitous, or attenuated) pre-litigation connections between the non-resident defendant and the forum; (2) the connection has been purposefully established by the defendant;

10

and (3) the plaintiff's cause of action arises out of or is related to the defendant's forum contacts." *See id*. at *10-11. To satisfy due process, a plaintiff must demonstrate that "the defendant purposefully established 'minimum contacts' with the forum state such that maintenance of a lawsuit does not offend traditional notions of fair play and substantial justice." *See id*. at *8. Notably, "[t]he plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper." *See id*.

Here, the Complaint affirmatively disclaims any grounds upon which this Court may exercise personal jurisdiction over Hanwin. Indeed, the events at issue took place on voyages from China to Baltimore and ports along the East Coast – not Louisiana. *See* Compl. ¶¶ 11-37, 47-52. Moreover, it is well settled that merely posting security for the release of a vessel does not constitute an appearance in an action or waive jurisdictional objections. *See 2 Mai Mangalia Shipyard S.A. v. M/V Bonsai*, No. 95-3861, 2002 U.S. Dist. LEXIS 4153, at *17-18 (E.D. La. Mar. 5, 2002) (no personal jurisdiction over foreign defendants who had merely posted bond to prevent attachment or arrest of vessel).

Further, Hanwin has not been properly served in accordance with the provisions of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention") as required by Fed. R. Civ. P. 4(f).[9] *See Hyundai Merch. Marine Co. v. Grand China Shipping H.K. Co.*, 878 F. Supp. 2d 1252, 1259-60 (S.D. Ala. 2012) (granting foreign defendants' motion to dismiss for lack of personal jurisdiction due to insufficient service of process after the defendant posted security); *Sheets v. Yamaha Motors*

---

[9] Because China is a signatory to the Hague Convention, service pursuant to its terms is mandatory. *Hyundai Merch. Marine Co. v. Grand China Shipping H.K. Co.*, 878 F. Supp. 2d 1252, 1259-60 (S.D. Ala. 2012) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988)).

*Corp.*, 891 F.2d 533, 538 (5th Cir. 1990) (holding that it is "well founded" for a foreign defendant to "insist[] on service of process in accordance with the Hague Convention").

In sum, the Court does not have personal jurisdiction over Hanwin. As such, Hawthorne's recovery, if any, is limited to the value of Hanwin's property attached in this Rule B action.

## CONCLUSION

For the foregoing reasons, Hanwin respectfully requests that this Court dismiss Hawthorne's Complaint and grant such other and further relief as it deems just and proper.

Dated: October 12, 2022.

Respectfully submitted,

s/David B. Sharpe
David B. Sharpe, T.A. (LA Bar No. 20370)
dsharpe@lawla.com
Alan R. Davis (LA Bar No. 31694)
adavis@lawla.com
Adelaida Ferchmin (LA Bar No. 28959)
aferchmin@lawla.com
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

and

Todd G. Crawford (LA Bar No. 21050)
tcrawford@lawla.com
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
801 Travis Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 222-1990
Facsimile: (713) 222-1996

**Certificate of Service**

I hereby certify that this document was served upon all counsel of record this 12th day of October, 2022, via email and by operation of the Court's CM/ECF system.

<u>*s/ David B. Sharpe*</u>
David B. Sharpe